IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | | |
|---|---|---|
| VIVIAN JOY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | NO. 13-3342 |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION

RICHARD MILLS, U.S. District Judge:

Vivian Joy seeks review of the decision of the Administrative Law Judge denying her application for disability insurance benefits and supplemental security income.

Pending are motions for summary judgment filed by both parties.

The ALJ's decision is affirmed and summary judgment is entered in favor of the Commissioner.

## I. BACKGROUND

### A. Introduction

Vivian Joy was born in 1959 and was 49-years-old at the time of her

alleged onset date. She has a limited education and has past relevant work as a cashier II, medical record clerk, and sales clerk. Her alleged onset date is June 1, 2008.

ALJ Robert H. Schwartz noted that Plaintiff has not engaged in substantial gainful activity since June 1, 2008. The ALJ found that Plaintiff has the following severe impairments: Hepatitis C with history of symptomatic pelvic pain, irritable bowel syndrome and mood disorder associated with depression and anxiety symptoms aggravated by interferon treatment for Hepatitis C.

The ALJ further found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

In contending that the ALJ's decision should be reversed, the Plaintiff alleges the ALJ failed to create an accurate residual functional capacity assessment that incorporated all of the Plaintiff's impairments.

Additionally, the ALJ failed to properly consider the Plaintiff's subjective complaints of pain and other symptoms and thus made an erroneous credibility determination.

The Defendant asserts the decision should be affirmed on the basis that substantial evidence supported the ALJ's residual functional capacity finding that Plaintiff could perform a range of work, as long as the work is accommodated significant mental, exertional and climbing restrictions.

B. Medical evidence

(1)

The Plaintiff states that she suffers from chronic pain and symptoms from the irritable bowel syndrome and Hepatitis C. On November 3, 2008, the Plaintiff went to the emergency room with crampy abdominal pain and diffuse in her abdomen associated with diarrhea. The Plaintiff was given IV fluids and pain medication and was resting comfortably following treatment.

On April 6, 2009, the Plaintiff went to the emergency room with complaints of abdominal pain. She was given fluids and pain medication

and was resting comfortably. The Plaintiff states that she was unable to receive any treatment for Hepatitis C because of her unstable mental health conditions.

On September 2, 2009, emergency room notes show that Plaintiff reported vomiting and complained of abdominal pain. A review of symptoms was negative or non-contributory to the Plaintiff's chief complaint. The Plaintiff was given IV fluids, antiemetic therapy and pain medication. Upon reevaluation, the Plaintiff felt better and her abdominal examination was benign on reevaluation.

On December 14, 2009, the Plaintiff went to SIU HealthCare for a check-up. She reported loss of appetite, diarrhea, vomiting, abdominal bloating, nausea, constipation, abdominal pain, back pain, joint swelling, stiffness and joint pain. The Plaintiff was told to increase her dietary fiber intake and continue taking Dicyclomine for irritable bowel syndrome. She was told to see Dr. Speil for Hepatitis C and he would start treatment soon. Regarding her depression, the Plaintiff had an upcoming appointment with psychiatrist David S. Resch, M.D.

On January 20, 2010, the Plaintiff went to the emergency room with complaints of vomiting and abdominal pain. She received treatment and had abdominal pain but was resting comfortably and was discharged.

On June 14, 2010, the Plaintiff went to the emergency room with a complaint of right upper quadrant pain. She was given some analgesics which provided relief.

On July 15, 2010, the Plaintiff advised that she was sent to the emergency room by her doctor's office when she complained of abdominal pain. Her labs were mostly unremarkable. She was given prescriptions for Norco and Zofran and advised to have some analgesics at home for pain control.

On October 29, 2010, the Plaintiff went to the emergency room complaining of nausea with diffuse abdominal pain and loose stool. She was given IV fluids and pain relievers and discharged with instructions to follow up with her doctor. On November 13, 2010, the Plaintiff had similar problems. On November 27, 2010, she went to the emergency room complaining of abdominal pain and diarrhea. She was given IV fluids

and painkillers and was diagnosed with irritable bowel syndrome. The Plaintiff was given prescriptions and told to follow up with Susan T. Hingle, M.D.

(2)

The Plaintiff also suffers from mental health impairments. On December 6, 2009, the Plaintiff went to the emergency room with an anxiety attack and stomach flare-up. She continued to report anxiety of moderate severity and problems sleeping. On December 30, 2009, the Plaintiff was seen by Dr. Resch, for evaluation of worsening depressed mood. The Plaintiff reported feeling more stressed and depressed in recent weeks. She reported excessive sleeping, low motivation and increased appetite. The Plaintiff's mood was down and her affect was blunted. She was assigned a Global Assessment of Functioning ("GAF") of 55.[1] On April 2, 2010, the Plaintiff complained of depression with symptoms that

---

[1] The GAF score "refers to a scale of 1 to 100 used by mental health clinicians and physicians to help determine how well a person is doing adjusting to the psychological and other challenges of living; the higher the score, the better [she is] doing." Price v. Colvin, 794 F.3d 836, 839 (7th Cir. 2015). The GAF has been criticized for subjectivity and is no longer widely used, see id., though it was at the time of the tests in this case.

included little interest or pleasure in doing things, trouble falling or staying sleep, feeling tired or having low energy and poor appetite. On June 7, 2010, the Plaintiff reported little interest or pleasure in doing things, feeling down, depressed or hopeless, trouble falling or staying asleep or sleeping too much; feeling tired or having little energy, poor appetite or overeating, feeling bad about herself or that she is a failure, trouble concentrating on things and moving or speaking slowly or being fidgety and restless.

On November 22, 2010, the Plaintiff reported worsening insomnia despite taking medications to help with sleep. In an April 2, 2011 appointment with Dr. Resch, the Plaintiff reported she had been feeling more down–having some good days alternating with bad days. Moreover, the Plaintiff was experiencing sleep problems, low energy, poor concentration, irritability and passive death wishes. On May 16, 2011, the Plaintiff telephonically reported feeling overwhelmed due to her father's illness and other family issues. The Plaintiff stated her medication was not working and requested more medications.

C. ALJ's Decision

The ALJ found that Plaintiff has the "residual functional capacity to lift, carry, push and/or pull no more than 20 pounds occasionally and no more than 10 pounds frequently. She can climb ladders, ropes, and/or scaffolding no more than occasionally." See R. at 25. The ALJ further found that Plaintiff's "ability to understand, remember, and carry out detailed instructions, to maintain attention and concentration for extended periods and to perform activities within a schedule, maintain regular attendance, and to be punctual within tolerances are all moderately limited." Id. Based on those limitations, the ALJ found that Plaintiff has the "attention and concentration to perform no more than simple, routine and repetitive tasks on a sustained basis with only routine breaks. She would do best in a low-stress job where speed of performance is not essential for work tasks." Id. The ALJ found that Plaintiff's "abilities to interact appropriately with the general public and to get along with co-workers or peers without distracting them or exhibiting behavioral extremes are moderately limited, and she lacks the temperament to handle frequent interaction with others." Accordingly, the ALJ stated that her contact with

coworkers or the general public should be limited to "occasional." Id. at 26. The ALJ found that Plaintiff had a moderate limitation in her ability to respond appropriately to changes in the work setting. "Therefore, any work should involve no more than ordinary and routine changes in work setting or duty." Id.

The ALJ determined that Plaintiff could not perform any past relevant work. Upon considering the Plaintiff's age, education, work experience, and residual functional capacity, the ALJ found that jobs do exist in the national economy that Plaintiff can perform. The ALJ cited the vocational expert's testimony that Plaintiff could perform occupations such as cleaner and housekeeping.

The Appeals Council denied the Plaintiff's request for review.

## II. DISCUSSION

### A. Standard of review

When, as here, the Appeals Council denies review, the ALJ's decision stands as the final decision of the Commissioner. See Schaaf v. Astrue, 602 F.3d 869, 874 (7th Cir. 2010). The Act specifies that "the findings of the

Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). "Substantial evidence" is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Yurt v. Colvin, 758 F.3d 850, 856 (7th Cir. 2014) (citations omitted). Although the Court's task is not to re-weigh evidence or substitute its judgment for that of the ALJ, the ALJ's decision "must provide enough discussion for [the Court] to afford [the Plaintiff] meaningful judicial review and assess the validity of the agency's ultimate conclusion." Id. at 856-57.

B. Residual function capacity assessment

The Plaintiff alleges the ALJ failed to create an accurate residual functional capacity that incorporated all of the Plaintiff's impairments. Given the Plaintiff's limitations, the ALJ's determination that Plaintiff retained the ability to lift, carry, push and/or pull no more than 20 pounds occasionally and no more than 10 pounds frequently; climb occasionally; understand and remember simple instructions; perform simple, routine and repetitive tasks on a sustained basis with only routine breaks; perform low-

10

stress jobs where speed is not essential for work tasks; and occasionally interact with others is not supported by the record. The Plaintiff asserts she has a number of limitations that would preclude her from performing work at that exertional level. The Plaintiff has severe and chronic pain due to her irritable bowel syndrome and Hepatitis. Moreover, the Plaintiff's mental health impairments greatly limit her ability to perform work activity.

(1)

The Plaintiff contends that because of her physical impairments and the associated chronic pain and symptoms, she would be forced to miss work regularly and would have to use the restroom more frequently than the regular break times. The Plaintiff's medical evidence documents that she was unable to receive any treatment for her Hepatitis C because of her unstable mental health conditions.

Additionally, the Plaintiff alleges her mental impairments would preclude her from being able to maintain her focus and concentration and would cause her to be unable to deal with even low stress work

11

environments, among other limitations.

The Plaintiff asserts that the failure of the ALJ to include these limitations is not harmless error. The ALJ's residual functional capacity finding was far beyond what her medical records support that she can do. The Plaintiff claims that her medical records documenting her chronic pain, need to use the bathroom, frequent hospitalizations and mental health symptoms indicate that she would be precluded from working.

The Commissioner alleges substantial evidence supported the ALJ's residual functional capacity finding that Plaintiff could perform a range of work, if such work accommodated significant mental, exertional and climbing restrictions. The ALJ based his finding on the opinions of state agency physician Francis Vincent, M.D., and state agency psychologist Jerrold Heinrich, Ph.D. An ALJ may rely on the uncontradicted expert opinion of a non-examining medical provider. See Summers v. Colvin, 634 F. App'x 590, 593 (7th Cir. 2016).

Dr. Vincent limited the Plaintiff to lifting and/or carrying 20 pounds occasionally and 10 pounds frequently and only occasionally climbing

ladders, ropes and scaffolds.  The ALJ's residual functional capacity finding provided for identical restrictions.  Dr. Vincent opined that Plaintiff could stand/walk for six hours and sit for six hours in an eight-hour day, which were the maximum walking, standing and sitting abilities Dr. Vincent could endorse on the form.  Accordingly, the ALJ did not restrict the Plaintiff's walking, standing or sitting.  Therefore, the ALJ's physical residual functional capacity finding was consistent with Dr. Vincent's opinion.

The record shows that Plaintiff visited the emergency room a number of times.  However, the ALJ notes that a number of these visits were apparently because the Plaintiff did not have medications for pain relief.  Generally, the Plaintiff was given IV fluids and pain medication, which relieved her symptoms and she was sent home the same day.  A condition that is controlled by medication is not disabling and need not be included in an individual's residual functional capacity assessment.  See Denton v. Astrue, 596 F.3d 419, 425 (7th Cir. 2010).  The ALJ acknowledged that Plaintiff experienced pain but found that "treatment records do not document allegations of severe pain of such frequency that the claimant

would be incapable of performing any sustained work, particularly if she utilized pain relief medication."  See R. 28.

The Plaintiff alleges the ALJ failed to properly consider the Plaintiff's subjective complaints of pain and other symptoms and therefore made an erroneous credibility determination.  An ALJ may not ignore subjective complaints of pain solely because they are unsupported by medical evidence, though he may consider discrepancies between the objective medical evidence and the degree of pain complained of by the claimant. See Schmidt v. Barnhart, 395 F.3d 737, 746-47 (7th Cir. 2005); Sienkiewicz v. Barnhart, 409 F.3d 798, 804 (7th Cir. 2005).  The applicable regulations and case law, in conjunction, "require an ALJ to articulate specific reasons for discounting a claimant's testimony as being less than credible, and preclude an ALJ from merely ignoring the testimony or relying solely on a conflict between the objective medical evidence and the claimant's testimony as a basis for a negative credibility finding." Schmidt, 395 F.3d at 746-47 (internal quotation marks and citations omitted).

On multiple occasions, the Plaintiff visited the emergency room with complaints of pain and was given over-the-counter medication, which relieved her pain. The Plaintiff reported having no analgesics at home. She has not alleged she was unable to afford any over-the-counter pain relievers. After being given pain medication, the Plaintiff's condition generally improved and she was sent home on the same day on most or all occasions. Accordingly, the ALJ had a reasonable basis for finding that these emergency room visits did not show disabling symptoms and discounting the Plaintiff's subjective complaints.

Although the Plaintiff alleges her mental impairments prevented her from getting treatment, the ALJ reasonably found this was not the case. The Plaintiff relies on an August 2009 medical note signed by a nurse and resident physician, which appears to say that Plaintiff did not take medication secondary to "severe depression." See R. 434. However, the ALJ pointed to evidence in the record that Plaintiff's mental impairments caused only moderate limitations. In her SSA Function Report, the Plaintiff acknowledged that she was able to shop for items, including her

medicine. The Plaintiff's sister also indicated she was able to shop. Consequently, there is no basis to find that the note cited by the Plaintiff refers to failure to take over-the-counter medication. The Court concludes that the ALJ's findings regarding the Plaintiff's medication non-compliance were reasonable.

(2)

As for mental health, Dr. Heinrich opined that Plaintiff had moderate limitations in her abilities to understand, remember and carry out detailed instructions; maintain attention and concentration for extended periods; perform activities within a schedule, maintain regular attendance and be punctual within customary tolerances; interact appropriately with the general public; get along with co-workers or peers without distracting them or exhibiting behavioral extremes; and respond appropriately to changes in the work setting. The ALJ's residual functional capacity finding accounted for each of those moderate limitations.

Dr. Heinrich made specific conclusions regarding how these moderate limitations would affect the Plaintiff's work performance. He opined that

Plaintiff was capable of understanding, remembering and executing simple instructions consistently. Although the Plaintiff could concentrate and persist adequately on task in an organized setting, she would adapt more easily to a low speed job where speed was not essential. Based on those limitations, the ALJ restricted the Plaintiff to understanding and remembering simple instructions; performing simple, routine, repetitive tasks; and doing low-stress work where speed of performance was not essential. Dr. Heinrich also observed that while the Plaintiff had adequate basic social skills, she could not have frequent interactions with others. Therefore, the ALJ limited the Plaintiff to only occasional contact with coworkers and the general public. Dr. Heinrich also concluded that Plaintiff could adjust to routine changes in her environment if those changes were not too frequent. The ALJ also restricted the Plaintiff to having no more than ordinary and routine changes in work setting or duty. Based on the foregoing, the ALJ's mental residual functional capacity finding was consistent with Dr. Heinrich's opinion.

In discussing his residual functional capacity finding, the ALJ noted

that the opinions of the non-examining state agency consultants, Dr. Francis Vincent and Dr. Jerrold Heinrich, provided support for his opinion. Additionally, the longitudinal history of the Plaintiff's GAF scores, her non-compliance with medication and treatment history suggested that the Plaintiff was capable of performing work consistent with the ALJ's residual functional capacity finding.

The observations of consultative examining psychologist Stephen Vincent, PH.D., also supported the ALJ's residual functional capacity finding. Although the Plaintiff presented with a moderately depressed mood and affect, she had adequate speech production, with normal rate and volume. Her thought process was slow and deliberate, but logical, coherent and relevant. The ALJ reasonably found that Dr. Stephen Vincent's observations did not indicate disabling symptoms.

Additionally, Dr. Heinrich considered Dr. Vincent's observations in developing his opinion. The ALJ's residual functional capacity finding was entirely consistent with Dr. Heinrich's conclusions. Accordingly, the ALJ accounted for Dr. Vincent's observations.

The ALJ also found that the longitudinal history of the Plaintiff's GAF scores did not suggest disabling impairments. Although the Plaintiff had an assessed GAF score of 50, her other scores of 55, 58 and 60 supported the ALJ's finding regarding the range of scores.[2] The ALJ reasonably explained how he accounted for the Plaintiff's moderate limitations.

The ALJ noted that, in July of 2009, more than one year after the Plaintiff's alleged onset date, she reported a history of intermittent depression, but denied having any depression at that time. When the Plaintiff claimed to have suffered an anxiety attack in December of 2009, emergency room staff assessed the Plaintiff's symptoms as mild-to-moderate. On December 30, 2009, the Plaintiff saw Dr. Resch for urgent care due to a worsening depressed mood. The ALJ noted that Plaintiff was experiencing emotional stressors at that time, which included breaking up with her boyfriend of fifteen years due to his excessive drinking and moving

---

[2]A GAF of 50 is at the upper range of scores (41 to 50) which indicate "[s]erious symptoms . . . OR any serious impairment in social, occupational, or school functioning." Scores between 51 to 60 indicate only "[m]oderate symptoms . . . OR moderate difficulties in social, occupational, or school functioning." American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders (DSM IV-TR) 34 (Text Revision, 4th ed. 2000).

in with her sister.  Moreover, while the Plaintiff had a down mood, blunted affect and reported low motivation, decreased appetite and poor sleep, she showed no psychomotor abnormalities, had a logical and goal-oriented thought process and had good insight and judgment.  Accordingly, the Plaintiff's treatment history supported the ALJ's residual functional capacity finding.

The ALJ observed that Plaintiff reported an increase in symptoms in May and June of 2010, but noted that the symptoms appeared to have been related to a number of stressors, including having been turned down for disability.  By September 2010, the Plaintiff was "doing OK" with a relatively stable mood and she was sleeping and eating well, though she stated she had been feeling a little more frustrated.  The ALJ found the Plaintiff's relatively stable mood to be significant, given the stressors she had been experiencing, which the ALJ noted included the Plaintiff's pregnant daughter attempting suicide, her daughter trying to break up the Plaintiff's relationship with her fiancé and the Plaintiff's financial problems. In an April 2011 appointment with Dr. Resch, the Plaintiff reported feeling

more down and she had occasional death wishes. The Plaintiff's GAF was assessed at 50. However, she presented as alert and oriented with a logical and goal-oriented thought process, normal speech, good insight and judgment and no suicidal ideation. Dr. Resch assessed the Plaintiff using the Sheehan Disabilities Scale and found the Plaintiff "markedly impaired" in her work, social life and leisure activities, and family and home responsibilities. The ALJ discounted the Sheehan Disabilities Scale and noted it suffers from the same infirmities as other self-report inventories in that scores can be easily exaggerated or minimized by the person completing them.

The ALJ found that the Plaintiff's anxiety during this period was exacerbated by certain stressors including her father's dementia and her new grandchild, in addition to her upcoming surgery for a hysterectomy. The Court finds that the ALJ reasonably found that Plaintiff's symptoms did not preclude all work, but allowed her to perform work within the restrictions of the residual functional capacity finding.

(3)

Additionally, the Plaintiff alleges that the questions posed to the vocational expert did not incorporate all of the Plaintiff's limitations. "Hypothetical questions posed to vocational experts ordinarily must include all limitations supported by medical evidence in the record." Steele v. Barnhart, 290 F.3d 936, 942 (7th Cir. 2002). Because the questions did not include all such limitations, the Plaintiff claims the vocational expert's testimony is unreliable.

The Plaintiff does not specify which limitations the ALJ omitted in his hypothetical questions. However, it appears that the ALJ included all of the Plaintiff's physical and mental limitations in asking the vocational expert the type of jobs that the Plaintiff could perform. Accordingly, the Court is unable to conclude that the ALJ erred in posing questions to the vocational expert.

## III. CONCLUSION

Upon considering the evidence of record, the Court concludes that substantial evidence supported the ALJ's finding that Plaintiff could perform certain work, subject to various physical and mental restrictions.

Ergo, the Motion of the Plaintiff for Summary Judgment [d/e 11] is DENIED.

The Motion of the Defendant for Summary Affirmance [d/e 16] is ALLOWED.

Pursuant to 42 U.S.C. § 405(g), the Clerk will enter a judgment affirming the decision of the Commissioner of Social Security.

ENTER: March 15, 2017

FOR THE COURT:

 /s/ Richard Mills
Richard Mills
United States District Judge